09-2962-cv
Miller v. Praxair, Inc., et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of November, two thousand ten.

PRESENT:

      AMALYA L. KEARSE,
      JOSEPH M. McLAUGHLIN,
      DEBRA ANN LIVINGSTON,
            *Circuit Judges*,

---

JOSEPHINE S. MILLER,
      *Plaintiff-Appellant*,

   -v.-                                No. 09-2962-cv

PRAXAIR, INC., DENNIS REILLY,
DAVID CHAIFETZ, and JOHN DAY,
      *Defendants-Appellees*.[1]

---

            JOSEPHINE S. MILLER, Danbury, Connecticut, *pro se*.

            LORI B. ALEXANDER (Theresa M. Waugh, *on the brief*), Littler Mendelson, P.C., New Haven, Connecticut, for *Defendants-Appellees*.

---

[1] The Clerk of Court is hereby directed to correct the caption to read as above.

Appeal from the United States District Court for the District of Connecticut (Christopher F. Droney, *Judge*).

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the district court's June 18, 2009 Order granting summary judgment in favor of defendants-appellees is AFFIRMED.

Plaintiff-appellant Josephine S. Miller appeals from the district court's grant of summary judgment in favor of defendants-appellees Praxair, Inc. ("Praxair"), Dennis Reilly, David Chaifetz, and John Day (collectively, "defendants"), on all of her claims, which stem from her one-time employment by, and ultimate resignation from, Praxair. Principally, Miller's complaint alleges that defendants unlawfully retaliated against and harassed her on account of her race, gender, and protected activity, ultimately "constructive[ly] discharg[ing]" her by creating working conditions so intolerable that she was left with no choice but to resign. After the close of discovery, the district court found that no issues of material fact remained in dispute and that defendants were entitled to judgment as a matter of law on each of Miller's claims. Miller contends those findings were in error. We presume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We review a grant of summary judgment *de novo*, and in so doing, we construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009); *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Cordiano v. Metacon Gun Club, Inc.*, 575

2

F.3d 199, 204 (2d Cir. 2009).

As noted, Miller's complaint principally raises claims for constructive discharge in violation of Connecticut law and Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e *et seq.*, and unlawful retaliation and harassment on account of her race, gender, and protected activity in violation of Connecticut law, Title VII, and section 1981 of the Civil Rights Act of 1871, *see* 42 U.S.C. § 1981. With respect to Miller's constructive discharge claims, the standard is the same under state and federal law: to establish a claim, a plaintiff must show that the employer "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). "The inquiry is objective: Did [the] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Penn. St. Police v. Suders*, 542 U.S. 129, 141 (2004). And as our case law makes clear, the standard is a demanding one, because "a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer" or that "the employee's working conditions were difficult or unpleasant." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993).

Here, the district court concluded that the conditions described by Miller, even viewed in the light most favorable to her, were insufficient to meet that standard. *De novo* review of the record confirms the soundness of that conclusion. The conditions alleged by plaintiff largely amount to the sort of routine disagreements with supervisors or mild criticisms that are simply insufficient to establish the sort of "intolerable" working conditions necessary to a constructive discharge claim. *See, e.g.*, *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325-26 (1983) (disagreements with assigned duties and "business judgments" of employer "cannot even remotely be described as intolerable").

Moreover, we note that Miller concedes that, after she tendered her resignation, defendants made *repeated* attempts to convince her to stay, and, accordingly, no rational trier of fact could conclude that a reasonable person in her position would have felt that her employer deliberately sought to make her working conditions so intolerable that she had no choice but to resign.

Alternatively, the complaint alleges that defendants unlawfully retaliated against and harassed her on account of her race or gender by (1) taking retaliatory "adverse employment actions" against her, and (2) creating a "hostile work environment for her." The district court concluded that Miller's claims failed because the evidence she proffered, even viewed in the light most favorable to her, were insufficient to establish either an adverse employment action or a hostile work environment. We agree with those conclusions.

As we have previously explained, an "adverse employment action" is "more disruptive than a mere . . . alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Instead, typical examples of actionable adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.* Here, aside from Miller's *voluntary* resignation, she identifies no adverse employment action taken against her. To the contrary, the complaint alleges that Miller was *promoted* during the relevant period and was implored by defendants to stay when she announced her intention to resign. As such, she cannot establish a claim for unlawful retaliation on this basis.

A "hostile work environment" exists where the evidence shows "misconduct . . . severe or pervasive enough to create an objectively hostile or abusive work environment" and which the "victim . . . also subjectively perceive[s] . . . to be abusive." *Feingold v. New York*, 366 F.3d 138,

4

150 (2d Cir. 2004) (internal quotation marks omitted). Among the factors courts consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

Here, as the district court correctly concluded, Miller offers no evidence which, even if credited, could satisfy that bar. Miller's strongest assertion – that on several occasions defendant John Day referred to the termination of African American employees by saying we just "shot" a "black male" – is insufficient even if credited because for a hostile work environment to exist, the offending "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted); *cf. Feingold*, 366 F.3d at 150 ("[A] single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." (internal quotation marks, alterations omitted)). Here, Miller does not adduce any evidence that those isolated statements – or any of defendants' other conduct – were anywhere near significant enough to "work[] a transformation" of her workplace. Accordingly, she cannot establish a claim on this basis, either.

Finally, Miller contends that the district court erred in granting summary judgment with respect to her remaining state law claims, and specifically, on her claim for wrongful discharge in violation of public policy. However, for the reasons set forth above, Miller is unable to establish that she was "discharged," and, accordingly, this claim also fails.

Thus, we detect no error in the district court's grant of summary judgment in favor of defendants on all of Miller's claims. To the extent Miller raises other arguments with respect to the

Order entered below, we have considered them and reject them as meritless.  Finally, because of our disposition of these issues, we deny as moot defendants' pending motion to dismiss the appeal.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk